# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JAMES P. CORNELIO,

              Plaintiff,

  v.

THE STATE OF CONNECTICUT, ALARIC
FOX, in his official capacity as Commander
of the Connecticut Department of Emergency
Services and Public Protection, MATTHEW
GARCIA, JOHN DOE, and JANE DOE,

              Defendants.

3:16-cv-01421 (CSH)

**MAY 24, 2017**

## RULING ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO AMEND

**HAIGHT, Senior District Judge:**

Plaintiff James P. Cornelio brings this litigation *pro se* alleging three 42 U.S.C. § 1983 claims that: (1) the enforcement of Conn. Gen. Stat. § 54-257(c) against Plaintiff was unconstitutional because the statute is impermissibly vague, violating Plaintiff's Fourteenth Amendment due process rights, (2) an injunction is necessary to enjoin the Connecticut Sex Offender Registry Unit ("SORU") from further violations of the provisions of the statute or to require SORU to modify its enforcement of the statute, and (3) he was maliciously prosecuted in violation of his Fourth Amendment rights. Doc. 1. Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331 and seeks compensatory and punitive damages as well as injunctive relief. *Id.*

Defendants appearing in this action, the State of Connecticut, Alaric Fox, a commander of the Connecticut Department of Emergency Services and Public Protection, which maintains SORU,

and Matthew Garcia, a SORU officer, have moved to dismiss each of Plaintiff's claims. Doc. 13.

This Ruling resolves that motion, and also addresses two pending subsequent motions filed by Plaintiff.

## I.    Standard of Review

To survive a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), Plaintiff must set forth claims with sufficient factual allegations, accepted as true, that "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)) (internal quotation marks omitted). The Court is guided by "'[t]wo working principles'" in applying this standard. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). First, all factual allegations in the Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor. *See id.* The Court need not credit "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). Second, "a complaint that states a plausible claim for relief" will survive a motion to dismiss and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted).

"Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Associated Fin. Corp. v. Kleckner*, 480 F. App'x 89, 90 (2d Cir. 2012) (summary order) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)). To reiterate, "[t]o survive a motion to dismiss, claims must be supported by factual

allegations that are 'enough to raise a right to relief above the speculative level' and with 'enough facts to state a claim to relief that is plausible on its face.'" *In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516, 2016 WL 4204478, at *2 (D. Conn. Aug. 9, 2016) (quoting *Twombly*, 550 U.S. at 555, 570). Even under this standard, however, the Court must liberally construe *pro se* pleadings and hold them to a less rigorous standard of review than pleadings drafted by an attorney. *See Boykin v. KeyCorp*, 521 F.3d 202, 213-14, 216 (2d Cir. 2008). Moreover, *pro se* pleadings and briefs must be read "to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)) (internal quotation marks omitted).

Generally, a Court may not consider any "matters outside the pleadings" when resolving a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The Second Circuit has detailed what a district court may consider at the Rule 12(b)(6) stage:

> In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citations and internal quotation marks omitted). Thus, the Court may properly consider the exhibits attached to Plaintiff's

Complaint, Exhibits A-L ("Ex."), and Defendants do not challenge the Court's consideration of these documents.

## II.       Background[1]

Plaintiff is a sex offender required to register pursuant to Conn. Gen. Stat. § 54-253 (Doc. 1, at 1), a statute whose provisions are included in an act of the Legislature "commonly referred to as Megan's Law," *State v. T.R.D.*, 286 Conn. 191, 196 (2008).   As a registered sex offender, pursuant to Conn. Gen. Stat. § 54-257(c), Plaintiff is required to sign and return a statement mailed by SORU to his known home address every ninety days. *Id.* at 1-2.  The statute provides that:

> the Department of Emergency Services and Public Protection shall verify the address of each registrant by mailing a nonforwardable verification form to the registrant at the registrant's last reported address.  Such form shall require the registrant to sign a statement that the registrant continues to reside at the registrant's last reported address and return the form by mail by a date which is ten days after the date such form was mailed to the registrant. The form shall contain a statement that failure to return the form or providing false information is a violation of section 54-251, 54-252, 54-253 or 54-254, as the case may be.  Each person required to register under section 54-251, 54-252, 54-253 or 54-254 shall have such person's address verified in such manner every ninety days after such person's initial registration date.  In the event that a registrant fails to return the address verification form, the Department of Emergency Services and Public Protection shall notify the local police department or the state police troop having jurisdiction over the registrant's last reported address, and that agency shall apply for a warrant to be issued for the registrant's arrest under section 54-251, 54-252, 54-253 or 54-254, as the case may be. The Department of Emergency Services and Public Protection shall not verify the address of registrants whose last reported address was outside this state.

Conn. Gen. Stat. § 54-257(c).

---

[1] The facts recounted here are derived solely from the allegations in Plaintiff's Complaint, Doc. 1, and the Exhibits attached to that Complaint.

On July 8, 2015, a Connecticut Trooper, Kyle Rapp, allegedly observed Plaintiff's car roll through a stop sign and pulled him over in New Preston, CT. Doc. 1, at 2. Trooper Rapp discovered in the course of his stop that there was a warrant out for Plaintiff's arrest for failure to register for two calendar quarters, June 2014 and September 2014. *Id.* Plaintiff was arrested, searched, fingerprinted, photographed and jailed on that warrant until he was bailed later that evening. *Id.* at 2-3. On November 6, 2015, a Connecticut Superior Court Judge dismissed the two felony counts against Plaintiff related to the 2014 violations. *Id.* at 4.

To present his claim in this Court, Plaintiff attached as Exhibit D to his Complaint an "Investigative Report" from 2012 that details past violations by Plaintiff but does not include a December 2009 violation—Plaintiff's alleged first violation. Doc. 1, at 3. Plaintiff alleges that the circumstances of his first violation are important to the present case. *Id.* In that instance, he was traveling out of state to visit relatives for Christmas and had emailed SORU to explain this (the email is attached to Plaintiff's Complaint as Exhibit E). *Id.* SORU responded, telling him to send something in writing detailing the address and explaining his vacation (the email response is attached to Plaintiff's Complaint as Exhibit F). *Id.*; Ex. F. Plaintiff sent the letter with the information requested by SORU the next day (Plaintiff attached a copy of this letter to his Complaint as Exhibit G). Doc. 1, at 3. He believed he had complied with the registration requirements, but discovered on or around February 12, 2010, while still out of the state, that SORU had forwarded three letters to Plaintiff's home regarding Plaintiff's failure to report his address and had reported the violation to the police. *Id.* Eventually, Plaintiff was able to satisfy the police and SORU that he continued to reside at his home in Connecticut and no warrant was sought. *Id.* In addition, no warrants were ever sought for the other four alleged violations listed in the Investigative Report

(occurring from 2010 through 2012).  *Id.* at 3-4.

Plaintiff also attaches as Exhibit H the application for the arrest warrant related to his 2014 arrest.  Doc. 1, at 3.  Plaintiff alleges that the warrant details he was two days late in responding for the September 2014 violation and fifteen days late in responding for the June 2014 violation.  *Id.* at 3-4.  Plaintiff was unaware that a warrant had been issued for almost four months.  *Id.* at 4.  Plaintiff alleges that it is critical that no warrant was ever signed for Plaintiff's first violation in 2009 or the other violations in the 2012 Investigative Report.  *Id.*  Plaintiff asserts in his Complaint that, similar to Plaintiff's previous encounters with SORU, another Connecticut defendant, the defendant in *T.R.D.*, was deemed "in compliance with his registration responsibilities" even though he returned a violation letter nineteen days after the letter was mailed.  *Id.* at 4 (quoting *T.R.D.*, 286 Conn. at 196) (internal quotation marks omitted).

Plaintiff claims that Conn. Gen. Stat. § 54-257(c) is vague primarily because as with the *T.R.D.* case, a registrant may be excused from a violation so long as he subsequently provides a signed violation letter attesting to his address, even if this is after the ten day period specified by the statute.  Doc. 1, at 5-6.  Plaintiff asserts that the statute "is a model of clarity and straightforwardness" providing that SORU mails a letter (the "Initial Letter") every ninety days and the registrant must return the signed Initial Letter "by a date which is ten days after the date such form [the Initial Letter] was mailed to the registrant."  *Id.* at 6 (quoting Conn. Gen. Stat. § 54-257(c)).  Failure to comply leads to an arrest warrant.  *Id.*  Plaintiff contends that the manner in which SORU has handled his own first violation and subsequent violations is evidence that the statute is impermissibly vague essentially because no arrest warrants issued for Plaintiff when they should have.  *Id.*

Plaintiff also takes issue with the violation letters (a "Notice of Violation Letter" and a "Final Notice of Violation Letter") sent to him (and the defendant in the *T.R.D.* case) because these are not mentioned in the statute. Doc. 1, at 6. Plaintiff essentially believes that replying to a violation letter should mean a registrant is in compliance with the statute and that no violation has occurred. *See id.* Moreover, the letters refer to an "investigation" of registrant's violation and it is unclear to Plaintiff what that means. *Id.* Plaintiff asserts that even a minimal investigation, including a "simple phone call," would have uncovered that he was still living at his home address in 2014. *Id.* at 6 & n.7. He alleges that the statute and investigation do not protect the public—which is the intent of the registration statute— and instead only punish the offender and registrant for late mail. *Id.* at 7.

Plaintiff also alleges that the statute's plain language was violated in his specific case because SORU, not local law enforcement, sought the arrest warrant. Doc. 1, at 7-8. Plaintiff believes that this combined with SORU's focus in the Investigative Report on a three strikes policy provides additional support that SORU intends to use the statute as a punishment on Plaintiff, which is contrary to the statute's regulatory purpose. *Id.* at 8. Plaintiff, however, is clear that he is not bringing any Eighth Amendment claim for cruel and unusual punishment. *Id.* Rather, Plaintiff focuses on the fact that the statute "is a muddled mess confusing everyone and everybody both subject to and tasked with enforcing it." *Id.* As an example of this confusion, Plaintiff attaches Exhibits I and J, his correspondence with SORU regarding what he should do to stay in compliance with the statute. *Id.* at 8-9. A Lieutenant in SORU responded to Plaintiff's inquiries by referring him only to the applicable statutes. *Id.*; *see also* Ex. J. Plaintiff argues that the statute, as drafted, does nothing to help those offenders seeking to comply with the law and the Lieutenant's referral was disingenuous. Doc. 1, at 9-10.

Plaintiff's second claim seeks an injunction enjoining SORU from further violating the statute, or in the alternative, an injunction seeking to modify and explain how the statute is to be enforced. Doc. 1, at 11. Plaintiff requests that the Court order that the statute be enforced on a consistent basis and not in an arbitrary or discriminatory manner. *Id.* Plaintiff seeks clarity on how to comply with the statute going forward. *Id.*

Plaintiff's third claim is against the officers of SORU, including Garcia and conceivably Fox as well as other unidentified Does, for maliciously prosecuting him in violation of the Fourth Amendment. Doc. 1, at 11-12. Plaintiff alleges that he relied on the manner in which SORU enforced his prior violations and SORU's officers should have known that violations cannot be enforced in an arbitrary or discriminatory manner. *Id.* Plaintiff also alleges that SORU officers knew he resided at his registered address and actively misled Plaintiff. *Id.* The procedural vehicle for this claim is also 42 U.S.C. § 1983. *Id.* at 1.

Plaintiff believes SORU had become vindictive and punitive in their enforcement of the statute without notice to him. Doc. 1, at 11-13. Plaintiff emailed SORU (attached as Exhibit K to Plaintiff's Complaint) five days prior to his traffic stop complaining about an improperly delivered letter for a violation from June 2015. *Id.* at 13. Plaintiff notes that he complained about the consequences of the error—that there could be a warrant out for his arrest unbeknownst to him—in the email and that SORU did not inform him there was already a warrant outstanding for his arrest. *Id.* Instead, SORU informed him, in a response attached as Exhibit L to Plaintiff's Complaint, that because they had in fact received the signed Initial Letter in the initial 10-day period no violation occurred. *Id.*; *see also* Ex. L. Plaintiff recounts all of the consequences that occur as a result of an arrest warrant issuing and states that the SORU officers were wholly ignorant of these possible

consequences, or even sought to inflict them on Plaintiff. Doc. 1, at 13. In a footnote, Plaintiff offers additional allegations that the evidence will show that SORU "manipulated the relative lack of awareness and disengagement of, or downright misled, the State's Attorney and the Judge who signed off on the warrant sought by SORU for Plaintiff's arrest." *Id.* at 14 n.36.

## III.    Discussion

Defendants have moved to dismiss Plaintiff's Complaint in its entirety. Doc. 13. Defendants argue that the Court should dismiss Plaintiff's first and second claims challenging Conn. Gen. Stat. § 54-257 as unconstitutional because the statute is not vague and provides adequate notice that certain behavior is prohibited. Doc. 13, at 4-11. Defendants allege that Plaintiff has only asserted an "as applied" challenge to the statute, and therefore, decline to address any facial challenge. *Id.* at 5-6. Defendants also argue that the Court should dismiss Plaintiff's third claim alleging malicious prosecution because Plaintiff has failed to allege facts demonstrating that there was no probable cause for his arrest. *Id.* at 11-14. In the alternative, Defendants argue that Defendant Garcia is entitled to qualified immunity from Plaintiff's third claim. *Id.* at 14-15.

Plaintiff responds by contending that he has asserted both an as applied and a facial challenge to the statute, given that nearly every hypothetical application of the statute is unconstitutional. Doc. 15, at 1-4. Plaintiff argues that for the statute to not be considered vague, it would follow that every time a registrant was past due on returning the Initial Letter, SORU would have to inform local enforcement, and local enforcement would have to seek an arrest warrant. *Id.* at 2-3. Plaintiff also asserts that Defendants' dismissal of the *T.R.D.* case as dicta is unpersuasive and that there are no cases where a registrant who failed to return timely an Initial Letter but later returned at least one of the letters was prosecuted. *Id.* at 4. Plaintiff takes issue with Defendants' distinction that a

registrant can be both "in compliance with" and "in violation of" the relevant statute. *Id.* at 5. Finally, Plaintiff argues that his malicious prosecution claim should proceed because discovery is needed and the arrest warrant was based on allegedly false statements regarding the enforcement of the statute. *Id.* at 6-7.

The Court will first address the parties' arguments regarding the constitutionality of Conn. Gen. Stat. § 54-257(c). The Court will then consider the parties' arguments regarding Plaintiff's malicious prosecution claim. Finally, the Court will address the other motions outstanding in this litigation.

### A.    Plaintiff's First and Second Claims

The Due Process Clause of the Fourteenth Amendment requires that each person be informed adequately as to what a law forbids or commands; in other words, there must be adequate notice given as to what a law requires. *Cunney v. Bd. of Trustees of Vill. of Grand View, NY*, 660 F.3d 612, 620 (2d Cir. 2011). There are two independent grounds upon which a statute's language may be so vague as to deny a person due process of the law. *Id.* The first occurs when a law "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Id.* at 620-21 (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)) (internal quotation marks omitted). The second occurs when the law "authorizes or even encourages arbitrary and discriminatory enforcement." *Id.* at 621 (quoting *Hill*, 530 U.S. at 732) (internal quotation marks omitted). There must be "explicit standards for those who apply" the statutes in order to avoid "resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)) (internal quotation marks omitted). The Supreme Court has recognized that the second ground is

"the more important aspect of the vagueness doctrine," which requires that laws contain "minimal guidelines to govern law enforcement." *Thibodeau v. Portuondo*, 486 F.3d 61, 66 (2d Cir. 2007) (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)) (internal quotation marks omitted). The Court applies a more stringent test to laws imposing criminal penalties because the consequences of any vagueness or imprecision is "qualitatively more severe." *Id.* (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 489, 499 (1982)).

"A statute may be challenged on vagueness grounds either as applied or on its face." *Thibodeau*, 486 F.3d at 66. Both of these challenges require conducting the inquiry laid out above, but each differs in how the challenges may be brought and what the parties may assert. *See id.* Plaintiff claims in his briefing to be bringing both an as applied and a facial challenge to the statute. The Court will address each in turn, starting with Plaintiff's as applied challenge. Addressing the as applied challenge is an appropriate starting point for the Court because "the permissibility of a facial challenge sometimes depends upon whether the challenged regulation was constitutional as applied to the plaintiff." *Id.* (quoting *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006)) (internal quotation marks omitted). Indeed, the Supreme Court has instructed courts to "examine the complainant's conduct before analyzing other hypothetical applications of the law." *Id.* (quoting *Hoffman Estates*, 455 U.S. at 495) (internal quotation marks omitted).

1. *As Applied Challenge*

With regard to the first ground for determining whether a statute is impermissibly vague as applied to an individual, the Second Circuit phrases the decisive question as "whether the law presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed." *Thibodeau*, 486 F.3d at 67. "A plaintiff making an as-applied

challenge must show that the statute in question provided insufficient notice that his or her behavior at issue was prohibited. The standard is an objective one." *Dickerson v. Napolitano*, 604 F.3d 732, 745-46 (2d Cir. 2010) (citation omitted). Because courts ask what an "ordinary person" is presented with when contemplating a statute, it is not relevant "whether a particular plaintiff actually received a warning that alerted him or her to the danger of being held to account for the behavior in question." *Id.* at 746.

The relevant portion of the Connecticut statute at issue in this case clearly and unambiguously sets forth a registrant's obligations: he or she must sign the verification form when received and mail it within ten days of it being mailed to the registrant. The statute provides that "the Department of Emergency Services and Public Protection shall verify the address of each registrant by mailing a nonforwardable verification form to the registrant at the registrant's last reported address" and that "[s]uch form shall require the registrant to sign a statement that the registrant continues to reside at the registrant's last reported address and return the form by mail by a date which is ten days after the date such form was mailed to the registrant." Conn. Gen. Stat. § 54-257(c). The statute also clearly lays out the consequences for a failure to return the form in a timely manner: "the Department of Emergency Services and Public Protection shall notify the local police department or the state police troop having jurisdiction over the registrant's last reported address, and that agency shall apply for a warrant to be issued for the registrant's arrest." *Id.*

The letters sent to Plaintiff, and attached to his Complaint, contain unambiguous language consistent with the statute at issue here. Exs. A-C. The Initial Letter sent by SORU recounts that the unit is "required to verify your residential address every 90 days" and that the registrant must "sign and return this address verification letter by mail within (10) days of the postmark or [the

registrant] will be subject to arrest for violation of state law." Ex. A. The Notice of Violation and Final Notice of Violation letters, which are mailed when the registrant fails to mail back or otherwise respond to the Initial Letter, each clearly explain that the registrant is "CURRENTLY IN VIOLATION OF [his or her] REGISTRATION REQUIREMENTS AND CONNECTICUT STATE LAW" for "FAILING TO VERIFY YOUR ADDRESS." Exs. B, C. The letters also clearly state that such a violation "will be reported to the law enforcement agency having jurisdiction over your last reported address" and that the "law enforcement agency is required by law to apply for a warrant for your arrest for this violation." *Id.* In addition, the letters note that in order to "return your status with [SORU] to 'In Compliance' you must sign and return this notice of violation letter within ten (10) days of the postmark. This will not erase or eliminate the violation that is mentioned above." *Id.*[2]

Plaintiff even recognizes that the statute itself is a "model of clarity and straightforwardness," Doc. 1, at 6, and the Court agrees.[3] The statute is unambiguous and clearly affords registrants an understanding of the conduct prohibited. Registrants must return the signed Initial Letter within ten days of the letter's postmark or they will be in violation of their registration requirements and Connecticut state law, reported to local law enforcement, and a warrant will be issue for their arrest. The subsequent violation letters sent to registrants and to Plaintiff consistently detail these obligations and violations.

---

[2] The Exhibits attached to Plaintiff's Complaint with this portion of the text are blurry and nearly illegible. *See* Exs. B-C. However, Defendants have provided the text in full, Doc. 13, at 8, and based on the review by the Court this text is consistent with the blurry text in Exs. B and C.

[3] Elsewhere in his Complaint, Plaintiff also states that "[t]he problem with the Relevant Statute isn't with the clarity." Doc. 1, at 10.

The real argument Plaintiff appears to be making, particularly given his reliance on the Connecticut Supreme Court case, *State v. T.R.D.*, 286 Conn. 191 (2008), relates to the second ground for concluding that a statute is void for vagueness: that the statute is so vague that it encourages arbitrary and discriminatory enforcement. The Second Circuit has held that a trial court may reject that claim of impermissible vagueness if the court determines "either (1) that a statute as a general matter provides sufficiently clear standards to minimize the risk of arbitrary enforcement or (2) that, even without such standards, the conduct at issue falls within the core of the statute's prohibition." *Thibodeau*, 486 F.3d at 68 (citing *Farrell*, 449 F.3d at 494). Plaintiff argues that enforcement of the statute is arbitrary because warrants were issued for his arrest when he was two days and fifteen days late in responding to letters from SORU, but such warrants were not issued for other registrants or in his own prior case for similar violations. As examples, Plaintiff points to (1) the defendant in *T.R.D.* and (2) the fact that Plaintiff's other delayed responses to Initial Letters noted in the Investigative Report did not result in the issuance of warrants for Plaintiff's arrest.

Evidence of arbitrary or discriminatory enforcement of a statute is of course relevant to a vagueness claim and is routinely considered by courts. *See Jones v. Schneiderman*, 974 F. Supp. 2d 322, 340 (S.D.N.Y. 2013) ("In this case, Plaintiffs support their vagueness claim with allegations that the [law] had been interpreted and applied in varied and conflicting ways. . . . Courts routinely consider such evidence in adjudicating vagueness claims." (collecting cases) (citations omitted)). However, in cases where such evidence has been used as support for vagueness claims, the evidence showed that the statute had been interpreted and applied in varying and conflicting ways because of the vagueness of the statute. *See, e.g.*, *Cunney*, 660 F.3d at 623 (holding that certain actions and admissions demonstrated that no standards existed and could encourage arbitrary enforcement). In

other words, the evidence needs to directly relate to the alleged vagueness and ambiguity of the statute at issue. *See, e.g.*, *Small v. Bud-K Worldwide, Inc.*, 895 F. Supp. 2d 438, 451 n. 11 (E.D.N.Y. 2012) (rejecting a vagueness claim because "there is simply insufficient evidence of arbitrary or discriminatory enforcement *based upon the purported vagueness of the terms*" (emphasis added)), *aff'd* 546 F. App'x 41 (2d Cir. 2013).

In this case, Plaintiff has not alleged that any specific vagueness or ambiguity in the statute, or any different interpretation of its terms or its application, has led to the arbitrary or discriminatory enforcement of the statute. The issue Plaintiff really has is not with the statute, whose clarity Plaintiff himself acknowledges. Plaintiff principally takes issue with the fact that some violations appear to have led to arrest warrants while other violations did not, and from his own experience, there is no clear line delineating when that happens. However, the statute itself is clear: if a registrant does not return a signed Initial Letter within 10 days of the postmark, then the registrant is reported to law enforcement and law enforcement is required to seek a warrant for the registrant's arrest. The Notice of Violation and Final Notice of Violation letters are equally clear in recognizing the force of the statute by stating that a violation has occurred, been reported, and that returning either of the violations letters will not absolve the registrant of the violation, and an arrest warrant will still issue because of that violation.[4]

Defendants are correct that the statute provides clear and explicit standards for its application. Specifically, it includes detailed instructions for (1) how to verify the registration's

---

[4] At times, Plaintiff appears to allege that the fact that there are Notice of Violation or Final Notice of Violation letters is inconsistent with the statute and impermissible. However, these letters clearly explain that a violation has occurred within the meaning and clear provisions of the statute. It is unclear how the use of such letters, which in fact appear to help resolve violations and provide notice to registrants of violations, is inconsistent or at odds with the statute.

home address; (2) where to mail the form; (3) the form's requirements; (4) the specific language to be included in the form; (5) the number of days within which the registrant has to return the form; (6) the frequency within the form will be sent; and (7) the consequences for failure to return the form. Each of these standards is clearly addressed and explicitly laid out by the statute. Plaintiff neither asserts nor explains how any of these provisions are vague, let alone how that vagueness has led or could lead to any arbitrary or discriminatory enforcement.

In addition, Plaintiff's reliance on *T.R.D.* appears to be misplaced. The Connecticut Supreme Court in *T.R.D.*, in recounting the facts of the case, explained that the defendant had failed to return an Initial Letter but did return a Notice of Violation Letter, and "was thus in compliance with his registration responsibilities for the first ninety day period." 286 Conn. at 196. Such treatment is consistent with the language in the Notice of Violation Letters, which explains that a registrant can return his or her registration status to "In Compliance" by returning the Notice of Violation Letter. *See* Exs. B-C. It does not mean that no arrest warrant issued for this violation (or that no violation in fact occurred), and based on the facts as detailed in the decision it is impossible to know whether that was the case. Thus, Plaintiff's reliance on *T.R.D.* for that proposition—as an example of an arbitrary non-enforcement of the statute and registration regulations—fails to support Plaintiff's argument.

Plaintiff's evidence of inconsistent enforcement of the statute as applied to his own case and other incidents where he failed to timely respond to the Initial Letter similarly fails to support Plaintiff's argument that the statute is void because it is too vague. As explained *supra*, such examples are not evidence of any arbitrary or discriminatory enforcement resulting from any vagueness in the statute itself. The statute, again, is clear and provides adequate standards for its

enforcement. By not timely confirming his or her address, a registrant has violated the statute, as Plaintiff did here for each of the violations, whether charged or not.[5]

In sum, Plaintiff's as-applied challenge to the statute fails. The statute provides (1) an ordinary person with sufficient notice of or the opportunity to understand exactly what conduct is prohibited or proscribed as and (2) the statute's clear standards minimize the risk of its arbitrary enforcement.

2.     *Facial Challenge*

A facial challenge to a statute based on vagueness is generally disfavored. *Dickerson*, 604 F.3d at 741-42. However, courts are permitted to recognize standing to bring such challenges in some cases, tending to do so only when the claims are based on the assertion of a First Amendment right. *Id.* at 742 (citing *Farrell*, 449 F.3d at 495 n.11). Regardless of the standard applied to such a claim, Plaintiff's facial attack would fail. The statute, as explained by this Court's analysis *supra*, is clear and would be valid as applied to Plaintiff (thus there is a set of circumstances to which the statute clearly applies) and there is no alleged vagueness that so permeates the law to infringe on a constitutionally-protected right. *See United States v. Rybicki*, 354 F.3d 124, 129-32 (2d Cir. 2003) (discussing each standard in detail and declining to permit such a challenge); *see also Dickerson*, 604 F.3d at 741-45 (discussing the standards applicable and declining to permit a facial challenge).

---

[5] In addition, regardless of whether the statute provides adequate standards, it is abundantly clear that the statute applies to Plaintiff's conduct. Plaintiff cannot bring a vagueness challenge when that is the case. *See United States v. Ahmed*, 94 F. Supp. 3d 394, 418 (E.D.N.Y. 2015) ("Put another way, '[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness.'" (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974))).

### 3.    *Conclusion*

In conclusion, Plaintiff has failed to adequately plead any constitutional challenge to Conn. Gen. Stat. § 54-257(c) based on any alleged vagueness in the statute.  Plaintiff's as-applied or facial challenges fail.  Thus, Defendants' motion is granted and such claims must be dismissed.  In dismissing this claim, the Court also dismisses Plaintiff's second claim in his Complaint.  That claim essentially argues that even if the statute is not impermissibly vague, then the Court should still prevent SORU from enforcing the statute and/or should modify the statute to prevent confusion.  For the reasons stated above, the Court declines to do so and such a claim must also be dismissed.  The statute is clear and provides adequate standards for its enforcement.[6]

### B.    **Selective Prosecution and Enforcement**

The Court is obligated to construe Plaintiff's Complaint as liberally as possible to raise the strongest arguments possible because Plaintiff is proceeding *pro se*.   *See Bertin*, 478 F.3d at 491. In doing so, it is apparent to this Court that Plaintiff's Complaint more closely reflects an equal protection claim for selective enforcement.  Plaintiff's primary issue is with how the statute is being enforced not with the actual statute itself.  Thus, the Court will address whether Plaintiff has plausibly and successfully pled such a claim.

A claim for selective enforcement requires that Plaintiff show "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the

---

[6] To the extent that Plaintiff has alleged his arrest was invalid because it was by SORU and not local law enforcement such a claim does not affect his constitutional vagueness challenge to the statute.  In any event, the statute explicitly provides that *either* local law enforcement or the state police troop having jurisdiction over Plaintiff's last known address may seek such a warrant.  Conn. Gen. Stat. § 54-257(c).

exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Tyk v. Police Officer Eric Surat*, No. 15-3813, 2017 WL 129145, at *2 (2d Cir. Jan. 12, 2017) (summary order) (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)) (internal quotation marks omitted). Plaintiff's claim in the case at bar, thus construed, fails because he has made no allegations that support any selective treatment when compared to similarly situated individuals or that such selective treatment was based on any impermissible considerations.[7] Plaintiff, instead, makes cursory allegations that there is a "three strikes" policy that somehow led to an arrest warrant issuing in his case.[8] No malicious or bad faith intent to injure Plaintiff is alleged. Moreover, "[m]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980) (citing *United States v. Rickenbacker*, 309 F.2d 462, 464 (2d Cir. 1962)). Indeed, "random underenforcement of the law by government authorities does not violate equal protection" and "the Equal Protection Clause does not require perfectly uniform enforcement efforts." *Gray v. Town of Easton*, 115 F. Supp. 3d 312, 319-20 (D. Conn. 2015) (citation and internal quotation marks omitted), *aff'd* 669 F. App'x 4 (2d Cir. 2016).

The Court understands that the fact that this law has not been applied consistently to Plaintiff (by not having arrest warrants issue for each violation or by being arrested when he returned violation letters) has caused Plaintiff a certain amount of distress and confusion about the requirements to comply. However, not every inconvenience rises to the level of a constitutional

---

[7] For the reasons explained *supra*, the *T.R.D.* case fails to provide a comparison to Plaintiff's circumstances and the only other possible comparator alleged by Plaintiff's Complaint is Plaintiff himself.

[8] The Court notes that based on Plaintiff's own interactions with SORU and violations it is implausible that a "three strikes" rule was applied.

violation, and this one does not. Moreover, the statute and the letters sent to Plaintiff have been clear—by not responding within 10 days and returning the first letter Plaintiff is in violation of the statute. Plaintiff cannot then seek to remedy that violation solely by returning the first letter late or by returning the subsequent violation letters; the violation has already occurred. Plaintiff has failed to allege any plausible selective enforcement claim based on his prosecution related to the two violations for which arrest warrants were issued and executed.

### C. Malicious Prosecution

To prevail on a § 1983 malicious prosecution claim, Plaintiff "must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted). Pursuant to Connecticut state law, the elements of a malicious prosecution claim are that "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982) (collecting cases and support).

As explained previously, Defendants contend that Plaintiff cannot establish that Defendant Garcia, or any other state employee including Defendant Fox, acted without probable cause because a warrant issued and Plaintiff does not contest that he was late in returning the verification letters. Doc. 13, at 13-14. Plaintiff responds that in a footnote in his Complaint he has alleged that Defendant Garcia, and other state employees presumably including Defendant Fox, manipulated and misled the State's Attorney and the Judge who signed off on the warrant and that this claim can only

-20-

be established through discovery and trial.  Doc. 15, at 6.

In general, when an arrest warrant has issued by a neutral magistrate courts have found that it is "objectively reasonable for [police] officers to believe there was probable cause" because a finding of probable cause was necessary for the warrant to issue.  *Golino v. City of New Haven, Conn.*, 950 F.2d 864, 870 (2d Cir. 1991) (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).  As a result, probable cause is presumed when the arrest is effected pursuant to a valid arrest warrant issued by a neutral magistrate.  *See id.*  Any plaintiff alleging that a warrant was issued on less than probable cause—as Plaintiff is alleging here—faces a "heavy burden" and must make a "substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause." *Id.* (citations and internal quotation marks omitted).

Here, Plaintiff makes no such allegations.  The arrest warrant affidavit clearly details that Plaintiff failed to return timely two address verification letters.  *See* Ex. H.  The Connecticut Judge signed and issued the arrest warrant based on this affidavit.  This is probable cause supporting that Plaintiff violated the statute.  Plaintiff himself recognizes that this would normally be adequate, but argues that because the Judge and State's Attorney did not know about SORU's three letter protocol or about SORU's policies generally, they were misled into seeking and issuing the warrant.  Doc. 15, at 6-7.  However, this ignores the language contained in the affidavit itself, which clearly refers to one Notice of Violation Letter, at least indicating that such a letter system existed.  *See* Ex. H at 2.  It also ignores that such a system is not inconsistent with the statute or misleading, as explained *supra* in this Ruling, and that Plaintiff does not allege that the facts regarding his violation were falsely reported in the affidavit.

Plaintiff also argues for the first time in his briefing that several hypothetical reasons may have caused SORU officers to want to teach him a lesson, including his multiple "prior 'violations' or his seeming arrogance or his possible lack of shame for, if not attempt to profit from, his crime." Doc. 15, at 7. However, these hypotheses (it is no more than that) do not negate the probable cause that existed regarding both of Plaintiff's violations or negate the fact that a neutral magistrate signed and issued the warrant. Plaintiff also fails to challenge in any way that he returned the letters late or that either violation actually occurred. Thus, he makes no allegations that there are any false statements made in the arrest affidavit and that such statements were necessary to the finding of probable cause.

In fact, regardless of whether probable cause existed, Plaintiff has failed to make any allegations that support malice on the part of Defendant Garcia or any other state employee, including Defendant Fox. In order to succeed on that claim, Plaintiff must plead and prove by direct evidence or a compelling inference that Defendants were motivated by an evil or unlawful purpose. *See Harasz v. Katz*, No. 3:15-cv-1528, 2017 WL 870393, at *12 (D. Conn. March 3, 2017). No such purpose is evident from Plaintiff's allegations in the Complaint and there are no inferences to be made regarding such a purpose based on Plaintiff's allegations. Plaintiff argues that there are a number of reasons that could have motivated his malicious prosecution in responding to Defendants' motion and that such facts may be discoverable at later stages of the litigation. However, even assuming Plaintiff had alleged these reasons in his Complaint, which he did not, "it is now well established that to survive a motion to dismiss, a plaintiff suing for malicious prosecution must allege facts sufficient to state a plausible claim that defendant acted with malice." *Id.* at *15; *see also Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015) ("It follows that malice must be alleged

plausibly in accordance with Rule 8."). Plaintiff has not plausibly pled such malice here and is not entitled to discovery without any such allegations.[9]

Plaintiff has failed to plausibly allege facts that support a malicious prosecution claim. Because probable cause for the issuance of his arrest warrant existed and Plaintiff has not alleged sufficient facts supporting malice on the part of Defendant Garcia or any other state employees, Defendants' motion is granted and his claim is dismissed.[10]

### D.     Leave to Amend

Because Plaintiff is proceeding *pro se*, the Court would normally allow Plaintiff the opportunity to file an amended complaint if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (internal quotation marks omitted). However, even a liberal reading of Plaintiff's Complaint fails to reveal any possible valid claim based on a vagueness challenge to the statute, selective enforcement, or a malicious prosecution claim, and therefore, Plaintiff will not be permitted to amend his Complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming the denial of a *pro se* plaintiff the right to re-plead where it would be futile because the complaint, even liberally construed, gave no indication that there is a valid

---

[9] Moreover, the allegations against Defendant Garcia also fail because he personally cannot be regarded as having "initiated" the criminal prosecution. He took only the ministerial act of affixing a notarial jurat to the arrest affidavit, and thus, the real initiator is Debbie Jeney who wrote and affirmed the veracity of the allegations in the affidavit. *See Harasz*, 2017 WL 870393, at *34 (rejecting a malicious prosecution claim against a police officer who merely notarized the arrest warrant affidavit). The same is true for Defendant Fox whose role in Plaintiff's prosecution is not clear or detailed by the Complaint.

[10] Defendants also moved to dismiss this claim based on qualified immunity grounds, Doc. 13, at 14-15. Because the Court has concluded that Plaintiff has failed to plausibly state such a claim, the Court need not address this additional reason for dismissal.

claim and the problem with the complaint was substantive). Plaintiff's allegations from his Complaint and from his briefings do not reveal to the Court any possible valid claims against Defendants (or the defendants Plaintiff seeks to add in his motion to amend addressed in the next part of this Ruling). The problem is with the substance of Plaintiff's claims and not with the form of his pleading. *See id.* Leave to amend the complaint will not be granted.

## IV. Plaintiff's Motion to Amend

Plaintiff has also filed a motion to amend his Complaint, Doc. 16, for the sole purpose of replacing the Doe Defendants and joining Michael Hofbauer, Michael Pirolli, and Deborah Jeney as parties under the initial Complaint with regards to his malicious prosecution claim. However, given the Court's analysis above that Plaintiff has failed to plausibly plead a malicious prosecution claim against Defendant Garcia or other state employees, the addition of these Defendants would not save Plaintiff's claim. Such additions would be entirely futile.[11] *See Jansson v. Stamford Health, Inc.*, No. 3:16-cv-260, 2017 WL 1289824, at *6 (D. Conn. April 5, 2017) ("An amendment is considered 'futile' if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." (collecting cases)). Therefore, Plaintiff's Motion to Amend is denied.

## V. Plaintiff's Motion for Summary Judgment

While Defendants' motion to dismiss was still pending, Plaintiff filed a motion for summary

---

[11] Even assuming that Deborah Jeney could be held liable as an initiator of the prosecution, Plaintiff still has not pled allegations supporting the absence of probable cause or any malice on the part of Deborah. Plaintiff's motion to amend contains no additional facts or allegations and simply seeks only to join the new Defendants.

judgment, Doc. 17.[12]   In light of the Court's ruling granting Defendants' motion to dismiss, Plaintiff's motion for summary judgment is denied as moot.

IV.     **Conclusion**

For the foregoing reasons, Defendants' [Doc. 13] motion to dismiss is GRANTED in full and Plaintiff's [Doc. 1] Complaint is DISMISSED WITH PREJUDICE.  Plaintiff's [Doc. 16] motion to amend the Complaint is DENIED and Plaintiff's [Doc. 17] motion for summary judgment is DENIED AS MOOT.  The clerk is directed to close the file for this case.

**IS SO ORDERED.**

**Dated: New Haven, Connecticut**
**         May 24, 2017**


*        /s/ Charles S. Haight, Jr.*
**CHARLES S. HAIGHT, JR.**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[12]  This was an improper filing because Plaintiff failed to comply with this District's Local Rules, which require that motions must be accompanied by a written memorandum of law and that "[f]ailure to submit a memorandum may be deemed sufficient cause to deny the motion."  D. Conn. L. R. 7(a)(1).